UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
**DOMINGO BORGES,**

        **Plaintiff,**

    -against-

**THE CITY OF NEW YORK, DETECTIVE JOHN SEEL, SGT. ROSA ANDRE,**

        **Defendants.**
-------------------------------------------------------------x

**OPINION & ORDER**

**19-cv-151 (NG)(CLP)**

**GERSHON, United States District Judge:**

    Plaintiff Domingo Borges brought this action under 42 U.S.C. § 1983 and New York State law, asserting claims of false arrest and malicious prosecution against defendants Detective John Seel and Sergeant Andre Rosa,[1] and the claim of failure to train against the City of New York. He subsequently voluntarily withdrew his claims against Sergeant Rosa and the City as well as his malicious prosecution claim under federal law against Detective Seel.

    Detective Seel now moves for summary judgment on the two claims that remain against him—one for false arrest under § 1983 and one for malicious prosecution under New York State law. Alternatively, he argues that he is not liable for any damages stemming from plaintiff's detention on a parole violation or for punitive damages.

    For the reasons set forth below, defendant's motion is granted.

**I.**     **Facts**

Except as otherwise noted, the facts are undisputed for purposes of this motion.

---

[1] This defendant was sued as Rosa Andre.

In 2017, plaintiff lived in an apartment building located at 57-12 164th Street, Queens, New York. On September 8, 2017, a neighbor of his, Silvia Cobas, called 911 to report that plaintiff was pounding on her apartment door. Mrs. Cobas lived in the same building as plaintiff in an apartment with her husband, Ramon Cobas, and her sons. Plaintiff was upset that one of Mrs. Cobas's sons had parked his car in a way that prevented plaintiff from parking his car properly. Plaintiff had argued with the Cobas family over parking issues many times in the past, but no one had ever called the police previously. Mrs. Cobas told the 911 operator that plaintiff was doing something "hard on the door . . . he wants to kick the door" and that plaintiff wanted to hit her sons. Def.'s Ex. C at 1–2.

Nonparty NYPD Officers Kishan Ramsumair and Gary Farley, of the 109th Precinct, responded to the 911 call. The officers talked to plaintiff and Mrs. Cobas outside; they never entered the building. The officers designated the job as a "noncrime" dispute and took no further action. At their depositions, both officers testified that they had no reason to believe that a crime had been committed that day and that no one in the Cobas family mentioned any damage to their apartment door.

On September 11, 2017, Mr. Cobas filed a complaint in person at the 107th Precinct that plaintiff had banged on his apartment door and caused damage. Detective Seel, who works at the 109th Precinct, which encompasses plaintiff's and the Cobases' apartment building, reviewed the resulting complaint report. On September 13, 2017, Detective Seel interviewed Mr. and Mrs. Cobas by telephone. According to Detective Seel's interview report, Mrs. Cobas told him that they had an "ongoing problem" with plaintiff, and "they are constantly being harassed by [him] yelling obscenities at them." Def.'s Ex. J. With respect to the September 8, 2017 incident, Mr. Cobas said:

2

> [T]here was a dispute with Mr. Borges and his son . . . [H]is son went out to get food and parked his vehicle behind Mr. Borges. . . . [T]his upset [Mr. Borges] and he proceeded to follow [] in the hallway behind his son . . . Mr. Borges then proceeded to bang on the door so hard that it caused damage to the door . . . [Mr. Cobas] was at work at the time of the incident, but his wife . . . was present.

*Id.* Mr. Cobas provided the detective with photographs of a door that was off its hinges and had a defective strike plate, the area of the door where the latch sits when the door is closed. Handwritten notes from Detective Seel indicate that Mr. or Mrs. Cobas also reported that plaintiff said, "I don't take shit from anybody, especially you." Def.'s Ex. K.

Based on these statements and the photographs of the damaged door, Detective Seel determined that probable cause existed to arrest plaintiff. On October 3, 2017, he and another detective arrested plaintiff for Criminal Mischief in the Fourth Degree, N.Y. Penal Law § 145.00(1).[2] Detective Seel testified that he was unaware that other officers had responded to the apartment regarding the dispute on September 8, 2017. Seel Dep., Def's Ex. I, at 32.

Before he arrested plaintiff, Detective Seel saw the Cobases' apartment door. It was "fixed" and looked "fine." *Id.* at 21. The detective did not ask them how the door came to be fixed.

After Detective Seel arrested plaintiff, he spoke with representatives from the Queens County District Attorney's Office and gave them his paperwork. Mrs. Cobas also spoke with representatives from that office. On October 4, 2017, plaintiff was arraigned on a criminal court complaint, signed by Detective Seel, charging him with Criminal Mischief in the Fourth Degree,

---

[2] "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she [i]ntentionally damages property of another person." N.Y. Penal Law § 145.00(1).

3

N.Y. Penal Law § 145.00(1), and Menacing in the Third Degree, N.Y. Penal Law § 120.15.[3] Citing Mrs. Cobas as the source, the complaint alleged that plaintiff "banged on her apartment door several times," "caused the hinges of her apartment door to come loose," did not have "permission or authority to damage the door," and cursed at and threatened Mrs. Cobas when she opened the door, while clenching his fist. Def.'s Ex. Q. At the arraignment on October 4, 2017, plaintiff was released on his own recognizance, having been held in custody for nearly 23 hours.

A note in the prosecution's file that memorialized an October 3, 2017 interview with plaintiff reads, in a section used to list follow-up steps, "Look into damage to door. Hinges are off door. Almost impossible for any person to damage door in that manner." Ex. 1(B) to Pollini Aff. Another note in the prosecution's file states that "both Geo and Latoya believe [Mr. Borges's] side of the story. Latoya said to call her for any info." Ex. 1(C) to Pollini Aff. The record does not provide further identification of Geo and Latoya.

On October 16, 2017, plaintiff, who was on parole for a 1993 murder conviction in Kings County, was taken into custody after he was charged by parole authorities with violating nine conditions of his parole supervision, all stemming from the September 8, 2017 incident. At a preliminary hearing on October 23, 2017, parole officials elected to proceed on one charge against plaintiff—that he "threatened the safety and well-being of [Mrs. Cobas] by confronting her with closed fists threatening to inflict bodily harm." Def's Ex. X at 2. After hearing Mrs. Cobas's testimony, a parole hearing officer concluded that there was probable cause for the charge against plaintiff and directed his detention through the final parole revocation hearing.

---

[3] "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal Law § 120.15.

On January 2, 2018, Mrs. Cobas signed a supporting deposition stating that the facts in the criminal court complaint were true. On January 23, 2018, the charges against plaintiff were dismissed on speedy trial grounds because the prosecution failed to timely file Mrs. Cobas's supporting deposition.

Plaintiff remained in custody on the parole violation. On March 22, 2018, a state court granted his petition for a writ of habeas corpus, which he filed on December 14, 2017. Explaining that Mrs. Cobas's testimony at the preliminary parole hearing "did not describe any physical action on [plaintiff's] part at the time" he allegedly threatened her son, the court found that "there was insufficient evidence to support the conclusion that [plaintiff] threatened the safety and well-being of the complainant." Def's Ex. X at 6−7. The court observed that parole officials could have elected to proceed on a different parole violation charge—that plaintiff had threatened the Cobases' safety and well-being when he kicked their apartment door—but elected not to do so. *Id.* at 7.

Plaintiff was released from custody on March 30, 2018.

### III. Summary Judgment Standard

A movant is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—may preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. While "circumstantial evidence may be. . . sufficient to raise a genuine issue of material fact precluding the grant of summary judgment," *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002), a party cannot survive a motion for summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).

**IV.    Discussion**

    **a. False Arrest under § 1983**

Plaintiff sues Detective Seel for false arrest under § 1983. Such claims are analyzed under the same standards as the applicable state law's false arrest tort. *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, a plaintiff alleging false arrest must show that "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* at 134−35 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).

The first three elements of plaintiff's false arrest claim are not in dispute, and therefore the only element at issue is the fourth—whether the arrest was privileged. An arrest is privileged if a defendant possessed probable cause. *Id.* at 135; *accord Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012). "Probable cause is not a particularly demanding standard." *United States v. Scala*, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). A police officer has probable cause to make an arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause does not require that an officer's good-faith belief that a suspect has committed or is committing a crime be "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). It requires only facts sufficient to establish "the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and alterations omitted).

While plaintiff disputes the truth of Mr. and Mrs. Cobas's allegations against him, he admits that they shared the allegations with Detective Seel before the detective arrested plaintiff. It is the content of those allegations, whether or not it is accurate, that is relevant to determining if the detective possessed probable cause to arrest plaintiff. *See Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (internal quotation marks omitted) (Because "there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." (internal quotation marks omitted)).

Here, Detective Seel possessed probable cause to arrest plaintiff for Criminal Mischief in the Fourth Degree, which penalizes "intentionally damag[ing] property of another person." N.Y. Penal Law § 145.00(1). "It is well-established that a law enforcement official has probable cause

7

to arrest if he received his information from some person, normally the putative victim or eyewitness." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and alterations omitted); *accord Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). Detective Seel based his decision to arrest plaintiff on the allegations of Mr. and Mrs. Cobas, who stated that plaintiff had damaged their apartment door by banging on it. These allegations were buttressed by the photographs showing the door off its hinges and with a broken strike plate.

Only where there is reason to doubt a putative victim's veracity will his or her allegations not suffice to establish probable cause. *See, e.g.*, *Betts*, 751 F.3d at 82; *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Plaintiff argues that there was reason to doubt the truth of the allegations. He cites the following: that Mr. Cobas, who did not see the incident, made the initial report to Detective Seel; that the photographs Mr. Cobas showed the detective lacked a time or location stamp; that it was impossible to tell if the photographs were of the door to the family home; that the photographs depicted damage that could not have resulted from banging on the door; that someone in the District Attorney's Office wrote that it was "almost impossible" for the door to be damaged in the way it was reported; and that Mr. and Mrs. Cobas had a grudge against plaintiff, as they had argued about parking on many prior occasions.

While these facts could be presented to a jury to argue that plaintiff is not guilty beyond a reasonable doubt of Criminal Mischief in the Fourth Degree, they do not establish that the purported victims' veracity was so in doubt that Detective Seel lacked probable cause to arrest plaintiff. The Second Circuit has made clear that, "[o]nce an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information." *Panetta*, 460 F.3d at 398 (internal quotation marks omitted); *accord D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir.

2008); *Curley*, 268 F.3d at 70. Thus, once Detective Seel interviewed Mr. and Mrs. Cobas and viewed the photographs, he had probable cause. And there is no evidence in the record of anything in the interviews or photographs themselves that obliged him to question the Cobases' veracity or to investigate the photographs. That someone in the District Attorney's Office—which tellingly proceeded with the prosecution of plaintiff for Criminal Mischief in the Fourth Degree— questioned whether the apartment door could have been damaged in the way Mr. and Mrs. Cobas claimed does not negate that defendant had probable cause when he arrested plaintiff.

Moreover, the record lacks evidence upon which Detective Seel could have relied to conclude that Mr. and Mrs. Cobas held a grudge against plaintiff. Indeed, it is undisputed that September 8, 2017 was the first time the police had been called to the apartment building as a result of a dispute between plaintiff and the Cobas family. There was, as a result, no reason for the detective to distrust Mr. and Mrs. Cobas's allegations. *Cf. Allen v. Leonard*, 2022 WL 580937, at *2 (E.D.N.Y. Feb. 24, 2022) (denying summary judgment on false arrest claim, among others, where the record contained evidence that the arresting officer knew that the complainant had lied and made a false report against plaintiff in the past); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003).

The two cases upon which plaintiff relies to argue that Mr. and Mrs. Cobas's accusations did not, as a matter of law, establish probable cause are different. In *Dufort v. City of New York*, 874 F.3d 338, 348−49 (2d Cir. 2017), the Second Circuit deemed summary judgment unwarranted on the plaintiff's false arrest claim where the probable cause determination relied largely on an eyewitness's identification of the plaintiff in "an improperly suggestive lineup" as well as the eyewitness's statements to the police that she recognized the plaintiff only by the color of his jacket and that she could not distinguish him from another person wearing a similar shirt. And, in *Zahrey*

9

*v. City of New York*, 2009 WL 54495, at *10−14 (S.D.N.Y. Jan. 7, 2009), *amended on reconsideration in part*, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009), when analyzing a malicious prosecution claim, the court determined that the plaintiff had presented sufficient evidence that the defendants did not have probable cause—specifically, that the only testifying witness with personal knowledge of the crimes for which the plaintiff had been indicted had repeatedly lied to police, prosecutors, and the grand jury and that law enforcement officials had pressured and induced the witness to implicate the plaintiff. The dramatic differences between the reasons cited by the courts to deny summary judgment in *Dufort* and *Zahrey* and those cited by plaintiff here merely highlight the weakness of plaintiff's position.

Plaintiff further asserts that, even if his conversations with Mr. and Mrs. Cobas and the photographs of the door initially gave Detective Seel probable cause to arrest him, probable cause dissipated before the arrest when the detective visited Mr. and Mrs. Cobas's home, saw their apartment door, and noticed that it was not damaged. Detective Seel testified that he assumed the door had been fixed. Plaintiff argues that the detective "was not entitled" to make this assumption. Opp. at 13. However, given that he arrested plaintiff almost a month after the alleged incident, it was entirely reasonable for Detective Seel to conclude that the door had been fixed—especially since a broken apartment door would be a priority to repair.

Although not mentioned by plaintiff, a notation in the Queens County District Attorney's Intake Bureau Crime Report indicates that plaintiff said to Detective Seel right before he was arrested, "We had an issue with the parking. The police came and everything was ok." Def.'s Ex. O at 3. This notation appears to contradict Detective Seel's testimony that, at the time he arrested

10

plaintiff, he was unaware that other officers had responded to the apartment on September 8, 2017.[4] Nonetheless, this potential contradiction does not create a triable issue of fact as to whether defendant had probable cause to arrest plaintiff as "arresting officers do not have to credit or investigate an arrestee's self-serving claims." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 572 (S.D.N.Y. 2015) (internal quotation marks and alterations omitted); *accord Armatas v. Maroulleti*, 2010 WL 4340437, at *7 (E.D.N.Y. Oct. 19, 2010), *report and recommendation adopted in relevant part*, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010), *aff'd*, 484 F. App'x 576 (2d Cir. 2012).

Citing the NYPD's Investigation Review Worksheet, plaintiff also argues that summary judgment should be denied "because issues of fact remain as to whether Detective Seel failed to take basic, elementary investigative steps"—namely, speaking to the officers who had visited the scene on the date of the incident—"that *would* have resulted in probable cause being dissipated." Opp. at 13. The Investigation Review Worksheet lists many steps that police officers can take when investigating a crime. Plaintiff stresses that the list includes interviewing the first officers on the scene, and he argues that Detective Seel's failure to interview Officers Ramsumair and Farley before arresting plaintiff requires that the question of whether there was probable cause to arrest him be presented to a jury.

Detective Seel testified that the Investigation Review Worksheet was not mandatory but rather "a guide." Seel Dep. at 31, 33. To refute this, plaintiff relies on an expert report from Lieutenant Joseph A. Pollini, a retired member of the NYPD, the Deputy Chairperson of the

---

[4] A different page of the Intake Bureau Crime Report gives the following explanation for the delay in arresting plaintiff: "Apparently the police came the night of, and there was a miscommunication about how to file a complain[t]. The complainant went to the court and then was told that she needed to go to the precinct. She then went to the precinct." Def.'s Ex. O at 1. Plaintiff relies on these statements as evidence that Detective Seel knew that prior officers had reported to the scene before he arrested plaintiff. But, as defendant responds, they do not show that he knew, *before* he arrested plaintiff, that other officers had visited the scene earlier.

11

Law/Police Science and Criminal Justice Administration Department and the Coordinator of the Police Studies Program at John Jay College of Criminal Justice, and an "expert in police investigations and procedure." Pollini Aff. ¶ 1. Lieutenant Pollini concluded that Detective Seel "did not conduct his investigation in a reasonable manner given the facts surrounding the September 8th incident." Pollini Rep., ¶ 10. Lieutenant Pollini faulted defendant for "simply rely[ing] on the word of the complaining witness and photos supplied by the complaining witness, rather than fully investigat[ing] the complaining witness's allegations," including by interviewing the first responding officers and interviewing plaintiff. *Id.* at 3−4. And he described the Investigation Review Worksheet "as a checklist of requirements that investigative officers must follow in every case, *if applicable*." Pollini Rep., ¶ 12 (emphasis added).

I agree with defendant that it is "self-evident" that the items listed on the Investigation Review Worksheet, which include interviewing "the 911 caller[]" and interviewing "the witness," neither of whom is present in every case, "do not apply in all cases." *See* Def.'s Memo. at 9; Pollini Rep., Ex. 1D. Lieutenant Pollini concedes as much with his use of the term "if applicable." And it appears clear that the worksheet's reference to interviewing the first officers on the scene applies to an officer arriving to a crime scene when other officers are already present—not to the circumstances at issue here. In any event, the parties' disagreement over whether the Investigation Review Worksheet was mandatory does not create a dispute as to any material fact. The Fourth Amendment—not police protocols—determines whether an officer had probable cause. *Whren v. United States*, 517 U.S. 806, 814−15 (1996) ("[P]olice enforcement practices, even if they could be practically assessed by a judge, vary from place to place and from time to time. We cannot accept that the search and seizure protections of the Fourth Amendment are so variable."); *see Thompson v. City of Chicago*, 472 F.3d 444, 454−55 (7th Cir. 2006) ("[T]he violation of police

regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."); *Gantt v. Ferrara*, 2020 WL 1189459, at *7 (S.D.N.Y. Mar. 12, 2020); *Scalpi v. Amorim*, 2018 WL 1606002, at *19 n.28, *21 n.35 (S.D.N.Y. Mar. 29, 2018).

Finally, plaintiff contends that, even if Detective Seel had not been required to speak with Officers Ramsumair and Farley before arresting plaintiff, the information possessed by those officers should be imputed to Detective Seel under the "collective knowledge doctrine." "The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all.'" *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)) (alterations omitted). The "rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Id.* (internal quotation marks omitted). Contrary to plaintiff's argument, the Second Circuit has emphasized that, while the doctrine can be used to aid officers in establishing probable cause, it "*cannot* be used to impute to an officer 'facts known to some [other] members of the police force which exonerate an arrestee.'" *Id.* (quoting *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986)). Plaintiff's reliance on the "collective knowledge doctrine" is erroneous.[5]

In sum, defendant is entitled to summary judgment on plaintiff's false arrest claim.

---

[5] Because I conclude that there was probable cause to arrest plaintiff for Criminal Mischief in the Fourth Degree, I do not address defendant's alternative arguments that there was probable cause to arrest him for Menacing in the Third Degree, N.Y. Penal Law § 120.15, and Harassment in the Second Degree, N.Y. Penal Law § 240.26(1).

### b. Malicious Prosecution under State Law

Detective Seel also moves for summary judgment on plaintiff's malicious prosecution claim under New York law. To prevail on such a claim, "a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted); *accord Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983). Defendant argues that plaintiff cannot satisfy the first, third, and fourth elements.

According to defendant, the first element of the claim—that Detective Seel initiated or continued the criminal proceeding against plaintiff—is not established because the prosecutor exercised his or her own independent judgment in choosing to pursue charges against plaintiff. But, under New York law, the act of signing the criminal court complaint, which Detective Seel did here, is considered the commencement of a criminal proceeding. *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010); *Melendez v. City of New York*, 2017 WL 4221083, at *4 (S.D.N.Y. Sept. 20, 2017). Nevertheless, because plaintiff cannot satisfy the third and fourth elements of his malicious prosecution claim, it cannot survive summary judgment.

"The existence of probable cause is a complete defense to a claim of malicious prosecution[.]" *Delamota v. City of New York*, 683 F. App'x 65, 66 (2d Cir. 2017) (alterations omitted); *accord Veloz v. City of New York*, 161 A.D.3d 668 (1st Dep't 2018). Probable cause is measured "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). Thus, the existence of probable cause to arrest a plaintiff "will also serve to

14

bar an action for malicious prosecution unless some intervening fact exonerating plaintiff has become known to defendants between the time of detention and the time of prosecution." *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210 (N.Y. 1982). To support his contention that a reasonable juror could find that defendant lacked probable cause to prosecute him, plaintiff relies only on the same arguments he made regarding probable cause in the context of his false arrest claim; he cites no intervening facts. Having already rejected those arguments above, I find that no reasonable juror could conclude that plaintiff satisfied the third element of his malicious prosecution claim.

I also find that plaintiff has not presented evidence upon which a factfinder could conclude that Detective Seel instituted the criminal proceeding against plaintiff with malice. Under New York law, malice requires a showing "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation marks omitted). "[P]robable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted." *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977). Plaintiff asserts that the lack of probable cause to arrest him creates an inference of malice. But, as described above, Detective Seel possessed probable cause when he arrested plaintiff.

Plaintiff also argues that "a jury could plausibly find that Det. Seel acted out of malice in not following police protocol in interviewing the initial responding officers and instead pursuing charges because an arrest benefit[ed] Seel financially." Opp. at 21. Although plaintiff does not cite to Lieutenant Pollini's report, his argument appears to refer to the lieutenant's contentions that "[t]he generation of an arrest enables an officer or detective to earn overtime pay, whereas the

15

decision not to arrest someone does not financially reward an officer" and that this "policy . . . motivates a detective not to fully investigate a case and to ignore the exculpatory information that Det. Seel could have found by interviewing the first responding officers or even talking to Plaintiff Borges prior to his arrest." Pollini Rep., ¶ 15. But this argument is based on pure speculation. The record contains no evidence that Detective Seel received overtime compensation from plaintiff's arrest. And, even if there were such evidence, it would be insufficient to infer that the detective acted with malice when he arrested plaintiff. *See Nibbs v. Goulart*, 822 F. Supp. 2d 339, 350 (S.D.N.Y. 2011) (prohibiting plaintiff from introducing at trial non-party police officers' memo books to demonstrate that the receipt of overtime is a motive to make arrests without probable cause and a basis to conclude that the police officers acted with malice).[6]

---

[6] Based on the Second Circuit's decision in *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), plaintiff agreed to dismiss his federal malicious prosecution claim because of his inability to show a favorable termination of the underlying criminal proceeding. The Court in *Lanning* held "that a plaintiff asserting a malicious prosecution claim under § 1983 must [] show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Id.* at 22. Subsequently, the Second Circuit clarified, in *Kee v. City of New York*, 12 F.4th 150, 163 (2d Cir. 2021), that *Lanning* did not alter the Court's previous holdings "that a speedy trial dismissal generally constitutes a 'favorable termination'" for a federal malicious prosecution claim. More recently, the Supreme Court rejected *Lanning*'s analysis and held, "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. __, 142 S. Ct. 1332, 1335 (2022). Plaintiff has not sought to resurrect his federal malicious prosecution claim. Even if he had, I would have dismissed it because of plaintiff's failure to establish two of its other elements—the absence of probable cause for the criminal proceeding and actual malice. *See Kee*, 12 F.4th at 161−62.

### IV.   Conclusion

For the reasons discussed above, defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in favor of defendant on all claims and to close the case.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

August 12, 2022
Brooklyn, New York

17